FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
May 30, 2018
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| RAYTHEON COMPANY, and its Subsidiaries, JPS Communications Inc., Raytheon Exchange Holdings, Inc. Raytheon Exchange Holdings II, Inc., Raytheon Exchange Holdings III, Inc., Raytheon Exchange Holdings IV, Inc., Raytheon Exchange Holdings V, Inc., and Raytheon Oakley Systems, LLC f/k/a Raytheon Oakley Systems Inc. | PLAINTIFFS |
| VS.   NO. 18-1030 | |
| LARRY WALTHER, in his official capacity as DIRECTOR, DEPARTMENT OF FINANCE AND ADMINISTRATION OF THE STATE OF ARKANSAS | DEFENDANT |

## COMPLAINT

Plaintiffs Raytheon Company, and its subsidiaries, JPS Communications Inc., Raytheon Exchange Holdings, Inc., Raytheon Exchange Holdings II, Inc., Raytheon Exchange Holdings III, Inc., Raytheon Exchange Holdings IV, Inc., Raytheon Exchange Holdings V, Inc., and Raytheon Oakley Systems, LLC f/k/a Raytheon Oakley Systems Inc. by and through their counsel, Wright, Lindsey & Jennings LLP, and for their complaint against defendant Larry Walther, in his official capacity as Director, Department of Finance and Administration of the State of Arkansas, state the following:

1. This action is brought pursuant to 42 U.S.C. § 1983; the Arkansas Constitution, Ark. Const. Art. 16 § 13; and the Supremacy Clause (Art. 4, Cl. 2), Commerce Clause (Art. 1, § 8, Cl. 3), and Due Process Clause (Amend. XIV, § 1), of the United States Constitution.

2. Raytheon Company is, and at all times mentioned herein was, a corporation formed under the laws of the State of Delaware.

3. JPS Communications Inc. is, and at all times mentioned herein was, a corporation formed under the laws of the State of North Carolina. JPS Communications Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

4. Raytheon Exchange Holdings, Inc. is, and at all times mentioned herein was, a corporation formed under the laws of the State of Delaware. Raytheon Exchange Holdings, Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

5. Raytheon Exchange Holdings II, Inc. is, and at all times mentioned herein was, a corporation formed under the laws of the State of Delaware. Raytheon Exchange Holdings II, Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

6. Raytheon Exchange Holdings III, Inc. is, and at all times mentioned herein was, a corporation formed under the laws of the State of Delaware. Raytheon Exchange Holdings III, Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

7. Raytheon Exchange Holdings IV, Inc. is, and at all times mentioned herein was, a corporation formed under the laws of the State of Delaware. Raytheon Exchange Holdings IV, Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

8. Raytheon Exchange Holdings V, Inc. is, and at all times mentioned herein was, a corporation formed under the laws of the State of Delaware. Raytheon Exchange Holdings V, Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

9. Raytheon Oakley Systems, LLC f/k/a Raytheon Oakley Systems Inc. is, and at all times mentioned herein was, a business entity formed under the laws of the State of Delaware. Raytheon Oakley Systems, LLC f/k/a Raytheon Oakley Systems, Inc. is a subsidiary of Raytheon Company, and its income was included on one or more of the consolidated Arkansas income tax returns that Raytheon Company filed in the years at issue in this complaint.

10.   The plaintiffs are collectively referred to as "Raytheon" in this complaint.

11.   Raytheon operates a manufacturing facility in East Camden, Ouachita County, Arkansas. This is Raytheon's only manufacturing facility in the State of Arkansas.

12.   Larry Walther is the Director of the Department of Finance and Administration of the State of Arkansas, sued in his official capacity. The defendant is referred to as "Arkansas" in this complaint.

13.   This is an action based on the following grounds: (1) for refund of income taxes paid by Raytheon to Arkansas for tax years 2008 through 2011 and 2014, plus interest on those payments from the time that they were remitted to the Department, and for abatement of income tax, interest, and penalties assessed against Raytheon for tax years 2012 through 2015; (2) for failure to provide the required statutory notice in connection with assessments for tax years 2012 and 2014; (3) for refusal to allow Raytheon to employ an alternative apportionment method under Ark. Code Ann. § 26-51-718; (4) for violations of the Supremacy Clause of the United States Constitution as to Arkansas's throw-back provision for sales to the federal government; (5) for violations of the dormant Commerce Clause and Due Process Clause of the United States Constitution as to Arkansas's throw-back provision; (6) for violations of the dormant Commerce Clause and Due Process Clause of the United States Constitution as to Arkansas's double-weighted sales

provision, when coupled with the throw-back provision; and (7) for illegal exaction under Ark. Const. 16 § 13.

14. Jurisdiction for this action is vested in this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b). Raytheon has timely filed this complaint pursuant to Ark. Code Ann. § 26-18-406(a)(1)(A) and Ark. Code Ann. § 26-18-406(b), and has exhausted all available administrative remedies.

15. On this date, Raytheon is also filing a substantively similar complaint in the Circuit Court of Ouachita County, Arkansas.

16. However, Raytheon anticipates that in response to the state lawsuit or at some point during the pendency of that suit, defendant may assert, or the circuit judge may raise *sua sponte*, the State's sovereign immunity from suit in state court. *See* Ark. Const. art. 5, § 20; *Bd. of Trustees of Univ. of Ark. v. Andrews*, 2018 Ark. 12.

17. In light of the *Andrews* decision's apparent broadening of the sovereign-immunity defense, the only established limit on the State's assertion of sovereign immunity is that the State cannot raise that defense for the first time on appeal. *See Walther v. Flis Enters.*, 2018 Ark. 64. Since *Andrews*, circuit courts in Arkansas have dismissed cases *sua sponte* based on sovereign immunity. In addition, while *Andrews* only expressly overruled prior precedents allowing for legislative waivers of sovereign immunity, the Arkansas Supreme Court has not answered whether other previously recognized exceptions to sovereign immunity

remain viable, specifically including the exception to sovereign immunity that allows suit to be brought against the State when the State acts illegally or in violation of the Arkansas or United States Constitution. *See Williams v. McCoy*, 2018 Ark. 17.

18. In light of the uncertain nature of a potential sovereign-immunity defense, Raytheon will have no assurance that its state-court action will ultimately be allowed to proceed until, at the earliest, that action reaches a final judgment in the circuit court. As such, Raytheon has no adequate remedy in Arkansas state courts, so this action is not barred by the Tax Injunction Act, 28 U.S.C. § 1341, or principles of comity.

## I. The Multistate Tax Compact

19. Arkansas has enacted the Multistate Tax Compact (the "Compact").

20. The Compact was initially conceived at a special meeting of the National Association of Tax Administrators in 1966. In November 1966, a committee of attorneys generals and tax administrators, under the auspices of the Council of State Governments, held a final drafting session for the Compact in November 1966. In 1967, states began to enact the Compact. In August of 1967, the seventh state enacted the Compact, at which time the Multistate Tax Commission was created. *See* www.mtc.gov/The-Commission/MTC-History. The aim of the commission, and of the Compact, was uniformity and fairness in state taxation of corporations that conducted businesses in more than one state.

21. In Act 410 of the Acts of 1967, the Arkansas General Assembly authorized Arkansas to participate in the Compact.

22. Section 1 of Act 410 states that the "'Multistate Tax Compact' is hereby enacted into law and entered into with all jurisdiction legally joining therein, in the form substantially as follows:".

23. What follows the enactment of the Compact is a description of its form. That description is the model Compact itself, and appears in quotes, beginning with the title "Multistate Tax Compact" and ending at the end of Article XII of the Compact, which completes Section 1 of the Act.

24. The Compact sets out the terms for a state to withdraw from the Compact: enacting a statute repealing it. Art. X, § 2.

25. After the enactment of the Compact in Section 1, Act 410 then moves to separate, Arkansas-specific provisions in Sections 2–9. Section 7 sets forth the Act's intent: "that by the enactment of the Multistate Tax Compact the General Assembly has established an option, as authorized in such Compact, whereby a multistate taxpayer may elect to report and pay taxes in accordance with the existing tax laws of this State, or in accordance with the terms of the Multistate Tax Compact, as the taxpayer may elect."

26. That option is the central component of the Compact. Without it, the Compact would be essentially meaningless to the multistate taxpayer.

27. The functionality of the option is described in Article III of the Compact. It provides that any "taxpayer subject to an income tax whose income is

subject to apportionment and allocation for tax purposes pursuant to the laws of a party State . . . may elect to apportion and allocate his income in the manner provided by the laws of such State . . . or may elect to apportion and allocate in accordance with Article IV."

28. Article IV of the Compact provided that all business income should be apportioned using a three-factor, equally weighted method.

29. For a multistate taxpayer in Arkansas, the three factors can be described as follows:

- The property factor—the average value of the taxpayer's property owned, rented, or used in Arkansas divided by the total average value of all of the property it owned, rented or used everywhere;
- The payroll factor—the total amount of compensation paid by the taxpayer in Arkansas divided by the total amount of compensation paid everywhere; and
- The sales factor—the taxpayer's total sales in Arkansas divided by its total sales everywhere.

These factors were calculated separately, then added together and divided by three, giving each factor equal weight. The resulting calculation was the apportionment factor, or the percentage of the taxpayer's overall gross income that would be apportioned to that state, Arkansas in this case.

30. In 1995, the Arkansas General Assembly passed a law to amend Arkansas's apportionment calculation. Instead of all three factors (property,

payroll, and sales) being equally weighted, the sales factor was double-weighted. See Act 682 of 1995.

31. Act 682 did not repeal Act 410 or Arkansas's enactment of the Compact. Moreover, Act 682 did not repeal, amend, alter, or even reference the taxpayers' right to elect apportionment under the terms of the Compact.

32. Act 682 did not alter the taxpayer's option to calculate its income tax using the three-factor, equally weighted apportionment formula set out in Article IV of the Compact.

## II. The Throw-back Provision

33. Arkansas employs a "throw-back" provision when determining what sales should be sourced as in-state sales for use in calculating the sales factor. The throw-back provision is found in the Compact at Article IV, § 16(b). The same provision is found in Ark. Code Ann. § 26-51-716, which was adopted in Arkansas in 1961 as part of the Uniform Division for Income Tax Purposes Act ("UDITPA").

34. For income tax purposes, sales are typically sourced to the state in which the product or service is delivered because the sale represents an exploitation of that state's market.

35. However, Arkansas imposes a different sourcing rule upon sales where the purchaser is the United States Government. Specifically, Arkansas mandates that all sales to the United States Government be sourced to Arkansas for income tax purposes if the property is shipped from an office, store, warehouse, factory, or other place of storage in Arkansas. This is known as a "throw-back" provision.

36. As discussed in detail below, Raytheon's sales from Arkansas are almost exclusively to the federal government. Consequently, Arkansas, through the application of its throw-back rule, classifies these sales as occurring in Arkansas for purpose of income tax apportionment.

### III. Raytheon's Business in Arkansas

37. Raytheon is predominantly a military contractor. Roughly 97 percent of its sales from Arkansas are to (1) U.S. Defense agencies or (2) foreign militaries, either by foreign military sales through the Department of Defense or direct commercial sales under export controls.

38. Raytheon operates a single manufacturing facility in Arkansas at Highland Industrial Park in East Camden. At this facility, Raytheon performs final assembly, packaging, and shipment of five separate missile types, including Tomahawk Cruise Missiles.

39. A significant portion of the work required to manufacture these missiles, including the acquisition, manufacture, and assembly of component parts, is performed in states other than Arkansas.

40. None of the products assembled in East Camden are for use in Arkansas. All are for use in naval warfare, and nearly all are sold to the federal government.

### IV. Raytheon's Tax

41. Beginning with tax year 2012, Raytheon exercised its right to elect to calculate its income tax due to Arkansas using the three-factor, equally weighted

apportionment formula allowed by the Compact, as authorized by Act 410. Raytheon continued to use this method on its as-filed returns for tax years 2013–2015.

42. On or about November 12, 2012, Raytheon requested a refund for tax years 2008–2010 based on Raytheon's election to calculate its income tax for those years using the Compact's three-factor, equally weighted apportionment method. Through verified claims, Raytheon used the Compact's three-factor, equally weighted apportionment method for its as-filed 2011 tax return.

43. Raytheon's use of the three-factor, equally weighted apportionment formula for tax year 2011 was rejected by Arkansas on August 12, 2013.

44. On October 11, 2013, Raytheon filed a protest of claim denial for tax year 2011 and requested an administrative hearing. In correspondence with Raytheon, the Department confirmed that the refund claims for the periods 2008 through 2011 would be handled as a single case with the Office of Hearings and Appeals.

45. In addition to denying Raytheon's requests for refunds, Arkansas has assessed additional taxes, penalties, and interest against Raytheon for tax years 2012–2015 because Raytheon opted to calculate its tax as allowed by the Compact. Raytheon filed protests and requested administrative hearings. Raytheon never received statutory notice of the assessments for tax years 2012 and 2014.

46. On December 1, 2017, the administrative law judge presiding over all of Raytheon's related protests issued two separate orders denying Raytheon's protests for tax years 2011 through 2015.

47. Raytheon has not received back the $3,198,160.00 it is owed in refunds from income tax overpayment from the years 2008–2011 and 2014.

48. Moreover, Raytheon has been assessed $2,594,245.00 in claimed income taxes owed, $911,568.00 in total penalties, and interest on these amounts continues to accrue.

## Count 1

49. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 48 above as if fully set forth herein.

50. Arkansas's rejection of Raytheon's election to apportion its income tax under the terms of the Compact violates Act 410.

51. Arkansas has wrongfully denied Raytheon's request for refunds for tax years 2008–2011 and 2014. Raytheon is owed a total of $3,198,160.00 in refunds for those years, plus interest on those payments from the time that they were remitted.

52. Moreover, Raytheon has been wrongfully assessed additional taxes, penalties, and interest for tax years 2012–2015.

53. All such assessments, penalties, and interest should be abated.

54. Raytheon appeals the December 1, 2017, decisions of the administrative law judge denying Raytheon's request for refunds and upholding all assessment, penalties, and interest against it.

## Count 2

55. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 54 above as if fully set forth herein.

56. If Arkansas determines that it will propose the assessment of additional tax plus penalties, Arkansas law requires Arkansas to "give notice of the proposed assessment to the taxpayer." Ark. Code Ann. § 26-18-403(a)(2).

57. Raytheon was never provided a Notice of Proposed Assessment with respect to tax years 2012 and 2014.

58. Nevertheless, Arkansas has assessed tax and penalties or reduced refund payments to Raytheon for the years 2012 and 2014 in the total amount of $1,482,277.00.

59. Because Arkansas failed to provide the statutorily required notice, all proposed and assessed tax, penalties, and interest for those years should be abated.

## Count 3

60. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 59 above as if fully set forth herein.

61. Separate and apart from the Compact, Arkansas law allows a taxpayer to utilize an alternative apportionment method when UDITPA provisions for apportionment do not fairly represent a taxpayer's business activities in Arkansas. Ark. Code Ann. § 26-51-718.

62. The alternative apportionment formula may include (a) separate accounting; (b) the exclusion of any one or more of the factors; (c) the inclusion of

one or more additional factors; or (d) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

63. In addition to being specifically allowed by the Compact and the Arkansas General Assembly's enactment of it, Raytheon's use of the Compact's three-factor, equally weighted apportionment formula is allowed under Ark. Code Ann. § 26-51-718.

64. As a result of Arkansas's refusal to allow the use of the three-factor, equally weighted apportionment formula, Raytheon has been wrongfully assessed additional taxes, penalties, and interest for tax years 2012–2015 and wrongfully denied refunds for tax years 2008–2011 and 2014.

65. All such assessments, penalties, and interest should be abated, and all such refunds, together with interest, should be paid.

## Count 4

66. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 65 above as if fully set forth herein.

67. Arkansas's throw-back rule singles out sales to the federal government for different treatment than other sales.

68. State taxes that discriminate against the federal government or those who contract with it, or substantially interfere with the federal government's activities, are constitutionally invalid. *United States v. New Mexico*, 455 U.S. 720, 736 fn. 11 (1982).

69. Arkansas treats a contractor's sales to the federal government differently than sales to other buyers. As a result, all taxes assessed under those rules should be abated and all refunds requested should be paid.

## Count 5

70. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 69 above as if fully set forth herein.

71. Raytheon's activities at its East Camden manufacturing facility include final assembly, packaging, and shipment of its missiles. None of the missiles are delivered to buyers in Arkansas.

72. Nevertheless, Arkansas seeks to impose and imposes income tax on Raytheon as though the entirety of its weapons that are shipped from Raytheon's East Camden facility were manufactured and assembled in Arkansas and, through application of the throw-back rule, treats every sale as though it occurred within the Arkansas market.

73. Because the Arkansas throw-back rule does not include any analysis of market-exploitation, consideration of the specific activity occurring in Arkansas, or any meaningful consideration of the nexus between Arkansas and the sales in question, it violates the dormant Commerce Clause and the Due Process Clause of the United States Constitution.

74. Arkansas's imposed tax burden on Raytheon is (1) not fairly apportioned among the states in which Raytheon conducts business; (2)

discriminatory toward interstate commerce; and (3) not fairly related to the market benefit Arkansas provides to Raytheon.

75. Because Arkansas's throw-back rule is unconstitutional as applied to Raytheon, all taxes assessed under those rules should be abated and all refunds requested should be paid.

### Count 6

76. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77. After applying the unconstitutional throw-back rule to Raytheon, Arkansas then amplifies the tax burden it places on Raytheon by proposing to double the sales factor in apportioning the tax due from Raytheon.

78. By overstating Raytheon's activity in Arkansas and doubling the sales factor, Arkansas violates the dormant Commerce Clause and the Due Process Clause of the United States Constitution.

79. Arkansas's imposed tax burden on Raytheon is (1) not fairly apportioned among the states in which Raytheon conducts business; (2) discriminatory toward interstate commerce; and (3) not fairly related to the market benefit Arkansas provides to Raytheon.

80. Because Arkansas's double-weighted sales factor, combined with the throw-back rule, is unconstitutional as applied to Raytheon, all taxes assessed under those rules should be abated and all refunds requested should be paid.

## Count 7

81. Raytheon repeats and incorporates the allegations set forth in paragraphs 1 through 80 above as if fully set forth herein.

82. Raytheon's payment of income taxes into the general revenues of the State of Arkansas affords it standing to sue on its own behalf and on behalf of all other interested citizens under Ark. Const. Art. 16 § 13.

83. Arkansas's attempt to eliminate the taxpayer option allowed under the Compact constitutes an illegal exaction from Raytheon and all taxpayers similarly situated.

84. Arkansas's throw-back rule singles out sales to the federal government for different treatment than other sales, is discriminatory, and is, therefore, constitutionally invalid.

85. Arkansas's utilization of the throw-back rule violates the dormant Commerce Clause and the Due Process Clause of the United States Constitution and as a result constitutes an illegal exaction from Raytheon and all taxpayers similarly situated.

86. Arkansas's utilization of a double-weight, three-factor test for apportionment of income taxes, in conjunction with the throw-back rule, violates the dormant Commerce Clause and the Due Process Clause of the United States Constitution and as a result constitutes an illegal exaction from Raytheon and all taxpayers similarly situated.

87. All funds exacted from Raytheon, and all taxpayers similarly situated, under these provisions constitute the proceeds of an illegal exaction scheme and must be refunded.

## Relief Demanded

88. For the reasons stated above, Raytheon demands the following relief:

(a) a declaration that Act 410 vests taxpayers with the legal right to elect to apportion income under the terms of the Compact;

(b) a refund of income taxes to Raytheon in the sum of $3,198,160.00;

(c) interest on such refund of taxes from the date that Raytheon paid such taxes, as provided by law;

(d) an abatement of all taxes and penalties, and associated interest, assessed against Raytheon for tax years 2012–2015;

(e) a reversal of the December 1, 2017, decisions of the administrative law judge;

(f) a declaration that Arkansas's apportionment taxation scheme, as applied to Raytheon and all taxpayers similarly situated, is unconstitutional;

(g) an accounting of all public funds received by Arkansas under its income tax apportionment scheme for the past three years;

(h) a common fund to be established to repay taxpayers the unlawful charges;

(i) an award of attorneys' fees and costs; and

(j)     such other further relief as the Court deems appropriate.

## PRAYER

WHEREFORE, Raytheon Company requests the Court enter a final decree, granting the relief demanded in this Complaint, award Raytheon its costs, and such other and further relief, the Court may find, Raytheon entitled to receive.

Dated this 30th day of May, 2018.

> WRIGHT, LINDSEY & JENNINGS LLP
> 200 West Capitol Avenue, Suite 2300
> Little Rock, Arkansas 72201-3699
> (501) 371-0808
> FAX: (501) 376-9442
> E-MAIL: jtisdale@wlj.com
>         rpmoore@wlj.com
>         mthompson@wlj.com
>
> By _____
> John R. Tisdale (75127)
> Rodney P. Moore (96134)
> Michael A. Thompson (2010146)
>
> *Attorneys for Raytheon*